UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 1:21-cr-568 (CJN) |
| v. | : | |
| | : | |
| KENNETH HALE, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Kenneth Hale ("Hale") to 120 months' incarceration.[1]

### I.     Factual and Procedural Background

As outlined in the Statement of Offense in this matter, Hale participated in a KIK chat group called "you.ngshare," comprised of approximately 400 users, dedicated to trading and viewing images of child pornography. ECF No. 81, ¶¶ 1-2. During Hale's time in the group, he logged on with the username, "baddaddy1973." ECF No. 81, ¶ 2. Hale posted a one minute twenty four second video file to the group, which depicted a prepubescent female child engaging in mouth to penis contact with an adult male. ECF No. 81, ¶ 2. Hale subsequently posted a one minute fifty nine second video to the group which depicted an adult male nude on a bed with a female child approximately four to six years old. ECF No. 81, ¶ 2. The video depicts the man picking up the child's dress, and positioning her on her hands and knees before pulling down her underwear and

---

[11] The government did not receive any restitution requests pertaining to the videos that Hale distributed during his conduct in this matter.

1

penetrating her anally or vaginally with his penis while kneeling behind her. ECF No. 81, ¶ 2. In response to a video depicting the abuse of a prepubescent male child posted by another member of the group, Hale stated, "Mmm, mom sucking her son vid never gets old." ECF No. 81, ¶ 2.

On October 13, 2020, Hale engaged in direct message communications with an undercover agent (UC) in the group. ECF No. 81, ¶ 3. The messages exchanged between the undercover agent and Hale are as follows:

HALE: Nice conversation in group. I did same with my 8 yo daughter years ago. Sadly no pics. Would love to relive it thru pics u post if ur daughter

UC: Nice, yeah I don't have full custody but play when she sleeps and take lives

HALE: Cool. When will u get her next

HALE: I use to live to play with mine especially loved when she got scared and had to sleep in bed with me and wife.

UC: Mmmmm, not sure hopefully next week

HALE: Like I said I sure hope so. Would love to relive that thru u n ur daughter. Was so damn hot

HALE: Especially loved cumming in her mouth while she was sleep on the couch

UC: Mmmmm yes

UC: I'll be back in a bit have to dun some errands

HALE: Got the tip of my cock parting her lips too. It getting moist felt so good. Also used her hand to jerk me off on her.

During the course of the government's investigation, law enforcement agents interviewed Hale's stepdaughter's grandparents who reported that his stepdaughter previously made an allegation that he forced her to perform oral sex on him. Her grandparents indicated that they believed she reported this incident to get out of trouble and therefore did not believe the allegation to be true. When Hale's stepdaughter, who is now sixteen-years-old was interviewed by law enforcement agents in connection with this matter, she reported that Hale acted in ways that made

her feel uncomfortable, including touching her on the buttocks when she was in the third grade and watching her dress and undress, but did not report that he forced her to perform oral sex on him. PSR at ¶ 17.

## II.     Statutory Penalties

The defendant now faces a sentencing on one count of Distribution of Child Pornography in violation of 18 U.S.C. 2252(a)(2). As noted by the U.S. Probation Office, the defendant faces a minimum sentence of five years' imprisonment, up to 20 years' of imprisonment and a $250,000 fine.

## III.    The Sentencing Guidelines and Guidelines Analysis

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. *Id.* at 49.

The government agrees with the Sentencing Guidelines calculation set forth in the PSR. According to the PSR, the U.S. Probation Office calculated Hale's adjusted offense level under the Sentencing Guidelines as follows:

| | |
|---|---:|
| Base Offense Level (U.S.S.G. § 2G2.2(a)(2)) | 22 |
| Specific Offense Characteristics | |
| Depictions of minors under 12 (U.S.S.G. §2G2.2(b)(2) | +2 |
| Knowingly engaged in distribution (U.S.S.G. §2G2.2(b)(3)(F) | +2 |

3

| | |
|---|---|
| Sadomasochistic material (U.S.S.G. §2G2.2(b)(4)(A)) | +4 |
| Use of a computer U.S.S.G. §2G2.2(b)(6) | +2 |
| Involved 10 images U.S.S.G. §2G2.2(b)(7)(A) | +2 |
| | |
| Acceptance of responsibility U.S.S.G. §3E1.1(a) & 3E1.1(b) | -3 |
| | |
| Total Adjusted Offense Level | 31 |

*See* PSR at ¶¶ 28-41.

The U.S. Probation Office calculated Hale's criminal history as a category I, which is not disputed. PSR at ¶ 44. Accordingly, the U.S. Probation Office calculated Hale's total adjusted offense level at 31, and his corresponding Guidelines imprisonment range at 108-135 months. PSR at ¶ 7.

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita*, 551 U.S. at 349. As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise,'" and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108. Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101. As the Third Circuit has stressed:

> The Sentencing Guidelines are based on the United States
> Sentencing Commission's in-depth research into prior sentences,
> presentence investigations, probation and parole office statistics,
> and other data. U.S.S.G. §1A1.1, intro, comment 3. More
> importantly, the Guidelines reflect Congress's determination of
> potential punishments, as set forth in statutes, and Congress's

> on-going approval of Guidelines sentencing, through oversight of
> the Guidelines revision process. See 28 U.S.C. § 994(p) (providing
> for Congressional oversight of amendments to the Guidelines).
> Because the Guidelines reflect the collected wisdom of various
> institutions, they deserve careful consideration in each case.
> Because they have been produced at Congress's direction, they
> cannot be ignored.

*United States v. Goff*, 501 F.3d 250, 257 (3d Cir. 2005). "[W]here judge and Commission *both* determine that the Guidelines sentences is an appropriate sentence for the case at hand, that sentence likely reflects the § 3553(a) factors (including its 'not greater than necessary' requirement)," and that *significantly* increases the likelihood that the sentence is a reasonable one." *Rita*, 551 U.S. at 347 (emphasis in original). In other words, "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough*, 552 U.S. at 89.

Here, while the Court must balance all of the § 3553 factors to fashion a just and appropriate sentence, the Guidelines unquestionably provide the most helpful benchmark.

**IV. Sentencing Factors Under 18 U.S.C. § 3553(a)**

In this misdemeanor case, sentencing is also guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, all of the Section 3553(a) factors weigh in favor of incarceration.

**A. The Nature and Circumstances of the Offense**

Hale made a series of decisions in this matter that show his willful participation in a group dedicated to trading child pornography and his desire to obtain more images of child pornography. Hale entered the "you.ngshare" group where participants were constantly posting images of child pornography in order to remain in the group. Hale posted two videos depicting the sadomasochistic abuse of two prepubescent children by adults. He went on to have a conversation with an undercover agent where he described how much he enjoyed his past sexual abuse of his eight-year-old daughter, including forcing her to perform oral sex on him. Hale also discussed the undercover agent taking pictures of the undercover's purported daughter and posting those pictures on KIK.

Each of these actions taken separately are concerning, however, when taken in the aggregate, they show that Hale has had a sexual interest in children over a long period of time and is now reaching out to others to discuss this interest and produce additional child pornography. The escalation of his behavior shows that he poses a danger to the community upon release and, therefore, should receive a lengthy period of incarceration.

### B. The History and Characteristics of the Defendant

While Hale does not have any prior criminal convictions, his lack of a criminal record does not adequately reflect his history and characteristics. Hale has a history of having a sexual interest in children based on his own words as well as his stepdaughter's interview with law enforcement. Hale told the undercover agent that he sexually abused his eight-year-old daughter in the past. This information was corroborated by Hale's stepdaughter's grandparents who indicated that she reported an incident where Hale forced her to perform oral sex on him. During her interview with law enforcement in connection with this matter, she reported that Hale acted in ways that made her uncomfortable and are highly concerning, including touching her on her buttocks and watching

6

her undress. This history in conjunction with Hale's conduct in this case show that his behavior is escalating, therefore, a lengthy period of incarceration is warranted.

While the government understands that Hale served in the military, that factor does not warrant a downward departure. In applying USSG 5H1.11, the Court should consider whether "military service, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines." Hale's military service is wholly irrelevant to the offense in this matter and any mental health diagnoses related to his military service are not connected to his conduct in this case. Based on the information reported by Hale's stepdaughter as well as the information he reported to the undercover agent, it appears that Hale had a sexual interest in children during the time he was in the military. Moreover, when looking at Hale's military service in conjunction with his other history and characteristics, his services is not present to "an unusual degree" that would warrant a departure.

The government disagrees with the U.S. Probation Department's conclusion that Hale has a low risk of recidivism. ECF No. 89. The evidence in this case shows that Hale has a history of a sexual interest in children. His lack of a criminal record reflecting this is the result of his ability to evade law enforcement detection, not an absence of criminal intent or criminal conduct. The circumstances of the instant offense as well as Hale's own statements to the undercover agent show that there is a significant risk of recidivism which weighs in favor of a lengthy period of incarceration.

    **C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law**

Child pornography offenses are extremely serious because they both result in perpetual harm to victims and validate and normalize the sexual exploitation of children. Courts across the country have recognized this:

> There can be no keener revelation of a society's soul than the way in which it treats its children. Given the current statistics, surrounding child pornography, we are living in a country that is losing its soul.
>
> Child pornography is a vile, heinous crime. Mention the term to your average American and he responds with immediate disgust and a sense of unease. However, once it enters the legal system, child pornography undergoes sterilization. The sterilization goes far beyond properly removing emotion from sentencing decisions. Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of the defendants, sorry that their actions were discovered by law enforcement.

*United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010), *affirmed* 669 F.3d 723 (6th Cir. 2012).[2]

In passing 18 U.S.C. § 2251, Congress similarly described the evil of child pornography:

> [W]here children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years . . . [The] existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children . . . it inflames the desires of . . . pedophiles . . . who prey on children, thereby increasing the creation of and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials.

---

[2] *See also In re Amy Unknown*, 636 F.3d 190, 201 n.12 (5th Cir. 2011) (*citing United States v. Norris*, 159 F.3d 926 (5th Cir. 1998) (describing how the distribution of child pornography creates a marketplace for images of children, perpetuating abuse); *United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005); *United States v. Grosenheider*, 200 F.3d 321, 332-34 (5th Cir. 2000).

Child Pornography Prevention Act of 1996, Pub.L. No. 104-208, § 121, 110 Stat. 3009, 3009-27 (1996).

There is perhaps no greater invasion of privacy than that caused by the dissemination of child pornography. With a click of the button on a camera, the sexual abuse of these children is memorialized forever. It is terrible enough that a child has to live with the memory of his or her nakedness and abuse in front of the initial photographer. It is hard to even comprehend how that child could also then learn to cope with the fact that strangers everywhere are using that painful memory to sexually gratify themselves and that he or she can do *nothing to stop them from continuing to do it*.

In this case, aside from the distribution of videos that Hale presumably received from other people, Hale also advocated for the production and distribution of additional images through his conversation with the undercover agent. This conduct is particularly serious because it indicates an interest in continuing to abuse and exploit children in the future, therefore, it requires a sentence that reflects its seriousness.

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence with respect to child pornography offenses is of particular import for three reasons. First, serious penalties for child pornography offenders decrease the number of participants in the market, which in turn decreases the need for its production.

> The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

*United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007).

Second, both Congress and the courts have recognized the high recidivism rates for these types of offenders.  *See* Blaisdell, Krista, Note, *Protecting the Playgrounds of the Twenty-First Century: Analyzing Computer and Internet Restrictions for Internet Sex Offenders*, 43 Val.U.L. Rev. 1155, 1192, n.150 (2009) (compiling congressional statements regarding the high risk of recidivism among child sex offenders); *United States v. Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008); *United States v. Allison*, 447 F.3d 402, 405-06 (5th Cir. 2006); *United States v. Garthus*, 552 F.3d 715, 720 (7th Cir. 2011) ("We need evidence-driven law just as we need evidence-driven medicine . . . statistical analysis of sex crimes has shown that the best predictor of recidivism is not deportment at an interview but sexual interest in children.") (citations omitted).

Third, there is an undeniable link between sexual contact offenses and the receipt and distribution of child pornography.  "An offender's pornography and erotica collection is the single best indicator of what he wants to do."  *See* Lanning, Kenneth V., *Child Molesters: A Behavioral Analysis – For Professionals Investigating the Sexual Exploitation of Children*, Office of Juvenile Justice and Delinquency Prevention, Fifth Ed. 2010, at 107.

Each of these factors is important in this case. Hale was not only a participant in the market for child pornography, but he was also distributing these images and seeking out additional images. Issuing a lengthy sentence of incarceration for Hale would deter him and others like him from continuing to participate in that market. Based on the information Hale reported to the undercover agent, it appears that Hale evaded law enforcement detection for years before his arrest in this matter in spite of sexually abusing his own daughter years ago. Because his behavior has been escalating over a period of years, it is important to give him a lengthy sentence of incarceration to act as a deterrent for any future conduct. The third factor, establishing a link between sexual contact

and receipt and distribution offenses, is present in this case. Because Hale has a self-reported history of sexual abuse, it is particularly important that any sentence he receives acts as a deterrent for his behavior.

### V.     Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. As explained herein, each of these factors requires a lengthy sentence of incarceration within the sentencing guideline range. Based on these factors, the government respectfully requests that the Court impose a sentence of 120 months' incarceration.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


By: _____
JANANI IYENGAR
NY Bar No. 5225990
Assistant United States Attorney
U.S. Attorney's Office
601 D Street, NW
Washington, D.C.
Office: 202-252-7760
Janani.iyengar@usdoj.gov